**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wind River Resources, LLC, et al., | |
| Plaintiffs, | No. CV-09-8023-PCT-PGR |
| vs. | |
| Herb Guenther, et al., | ORDER |
| Defendants. | |

Pending before the Court are Defendant Jack Riley's Motion to Dismiss Plaintiffs' First Amended Complaint or in the Alternative Motion for a More Definite Statement (doc. #89), Defendant Bob Frisby's Motion to Dismiss (doc. #90), and Rule 12(b) Motion to Dismiss of Defendants Herb Guenther and Karen Smith (doc. #91). Having considered the parties' memoranda in light of the relevant record, the Court finds that the plaintiffs' two federal claims must be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) and that all of their state claims must be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).[1]

---

[1] While oral argument has been requested, the Court has dispensed with it because a hearing would not aid the decisional process since the facts and

Background

Briefly stated, this action arises from the unsuccessful attempt by plaintiff Wind River Resources, LLC ("Wind River") to obtain a permit from the Arizona Department of Water Resources ("ADWR") to export ground water from the Beaver Dam/Littlefield area of the Arizona Strip for the purpose of selling it to the public utility serving Mesquite, Nevada. At the time Wind River filed its water exportation application in March, 2005, its principal was co-plaintiff Erika Van Alstine. A three-day public evidentiary hearing on Wind River's application was conducted in March, 2007 before a state administrative law judge ("ALJ"); the hearing record was held open until October 10, 2007 to allow the filing of briefs and rebuttal evidence. The ALJ issued a written decision on October 30, 2007, wherein he recommended that the director of the ADWR, defendant Herb Guenther, deny Wind River's application because it was inaccurate in certain respects and because Wind River had failed to submit satisfactory studies on the hydrolic impact of the proposal. Guenther entered his decision denying Wind River's application on November 28, 2007. Wind River did not appeal the denial of its application to the Arizona superior court as permitted by Arizona law.

The plaintiffs instead filed an action pursuant to 42 U.S.C. § 1983 in the District of Nevada on May 21, 2008. That action was transferred to this Court pursuant to 28 U.S.C. § 1404(a) on February 12, 2009. In their First Amended Complaint (doc. #87), filed on April 27, 2009, the plaintiffs sued Guenther and Karen Smith, ADWR's assistant director[2], as well Jack Riley and Bob Frisby, two

---

legal contentions have been adequately presented in the submitted materials.

[2] The plaintiffs concede in their response to the state defendants' motion to dismiss that Guenther and Smith are properly sued only in their individual

- 2 -

private citizens who actively opposed Wind River's application during the ADWR proceedings.  The First Amended Complaint raises two federal constitutional claims pursuant to § 1983 against all four defendants: denial of due process (First Cause of Action) and denial of equal protection (Ninth Cause of Action); it also raises seven state law claims against some or all of the defendants: fraudulent misrepresentation, fraudulent nondisclosure and concealment, intentional infliction of emotional distress, defamation, abuse of process, civil conspiracy, and denial of public records.  The First Amended Complaint does not seek to have the denial of Wind River's water exportation application overturned; rather, it seeks damages for the defendants' allegedly improper actions undertaken during the pendency of Wind River's application before the ADWR, including conspiring to onerously obstruct and delay the administrative application process for the purpose of financially destroying Van Alstine through increased bureaucratic, technical and legal costs.

Discussion

I.  *Rooker-Feldman* Doctrine

All of the defendants argue in part that the First Amended Complaint must be dismissed in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.  The Court concludes that the *Rooker-Feldman* doctrine is not applicable to this action.

The Ninth Circuit's general formulation of the *Rooker-Feldman* doctrine is that

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject

---

capacities.

- 3 -

> matter jurisdiction in a federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003); *see also*, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22 (2005) (Supreme Court noted that the *Rooker-Feldman* doctrine is narrowly confined to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.")

  First, although the parties do not distinguish between the two plaintiffs relative to the application of the *Rooker-Feldman* doctrine, there is in fact a material distinction inasmuch as the doctrine can only be applied against a "state-court loser." While Van Alstine was clearly in privity with Wind River, the losing applicant in the state administrative proceeding, nothing in the record establishes that she was an actual named party to that proceeding. As a non-party to the state proceeding, the Rooker-Feldman doctrine has no application to her claims raised in this action. Lance v. Dennis, 546 U.S. 459, 466, 126 S.Ct. 1198, 1202 (2006) ("The *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."); Johnson v. De Grandy, 512 U.S. 997, 1005-1006, 114 S.Ct. 2647, 2654 (1994) (*Rooker-Feldman* does not bar actions by a nonparty to the earlier state suit.)

  Second, although the defendants argue the *Rooker-Feldman* doctrine is applicable because this action is a de facto appeal from the state administrative proceeding and that the claims raised herein are inextricably intertwined with the

claims raised in the state proceeding, the Court disagrees. In determining the applicability of the *Rooker-Feldman* doctrine, the Court must pay close attention to the relief sought by the federal court plaintiffs. Bianchi v. Rylaarsdam, 334 F.3d 895, 900 (9th Cir.2003), *cert. denied*, 540 U.S. 1213 (2004). The *Rooker-Feldman* doctrine is not applicable to the claims of Wind River, or to those of Van Alstine even if she was a party to the administrative proceeding, because the relief sought in the First Amended Complaint does not include having this Court set aside the state administrative ruling that denied Wind River a water export license; rather, the relief sought in this action involves damages for the defendants' allegedly wrongful conduct during the ADWR proceeding. Maldonado v. Harris, 370 F.3d 945, 950 (9th Cir.2004) (Court concluded that the "inextricably intertwined" test did not come into play because the federal plaintiff was not bringing a forbidden de facto appeal since he was not alleging as a legal wrong an erroneous decision from the state court.), *cert. denied*, 544 U.S. 968 (2005); Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir.2004) (Court concluded that the *Rooker-Feldman* doctrine did not deprive it of subject matter jurisdiction because the plaintiff was not seeking damages based on any alleged error by the state courts, but rather was seeking damages based on the alleged wrongful behavior of the defendants during the underlying state court actions.) *See also,* Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir.1995) (In concluding that the *Rooker-Feldman* doctrine did not bar a § 1983 action wherein the plaintiff claimed that a conspiracy among attorneys and state court judges caused his state court defeat, the court stated: "Were Nesses merely claiming that the decision of the state court was incorrect, even if it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people

involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm. Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment[.]") (citations omitted).

II. Res Judicata

The defendants also all argue in part that the claims in the First Amended Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) as barred by the doctrine of res judicata. The Court agrees to the extent that it concludes that the plaintiffs are precluded by the doctrine from litigating their two federal claims in this action.

When, as here, an Arizona administrative agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it and the parties have had an adequate opportunity to litigate those claims, this Court is required to give the same preclusive effect to the state agency's determination to which that determination would be entitled in the courts of Arizona. University of Tennessee v. Elliott, 478 U.S. 788, 798-99, 106 S.Ct. 3220, 3226 (1986); Olson v. Morris, 188 F.3d 1083, 1086 (9th Cir.1999).[3] The Ninth Circuit has summarized the

---

[3] The Court concludes from its examination of the state administrative law judge's decision, which is a public record included in the record in this action, that the ADWR process sufficiently comported with the requirements of United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545 (1966), in that the ADWR acted in a judicial capacity, the agency resolved disputed issues of

governing law applicable to this issue as follows:

> Under Arizona law, a party's failure to appeal a final administrative decision makes that decision final and res judicata. Under the doctrine of res judicata, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. This doctrine binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated but also upon those points that might have been litigated. In Arizona, the failure to seek judicial review of an administrative order precludes collateral attack of the order in a separate complaint. If no timely appeal is taken, the decision of the board is conclusively presumed to be just, reasonable and lawful. This principle applies even to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction of the appeal.

Olson v. Morris, 188 F.3d at 1086 (internal citations and quotation marks omitted).

In the First and Ninth Causes of Action of the First Amended Complaint, the plaintiffs allege that the conspiratorial actions of all four defendants related to the manner in which the ADWR proceeding was conducted violated their federal constitutional rights to due process and to equal protection. The Court concludes that if the plaintiffs had constitutional defenses to the state administrative proceeding, they had the right to raise those issues with the ADWR or on appeal in state court. *Id.* at 1086-87; Dommisse v. Napolitano, 474 F.Supp.2d 1121, 1131 (D.Ariz.2007) ("In this case, Dommisse failed to appeal the final amended decree of the [Arizona Medical] Board. This final decision is a res judicata and may not be challenged even in a separate action in federal court. The constitutional issues Dommisse advances in the instant action could have been brought before the Board or on appeal before the state court."), *aff'd*, 340 Fed.Appx. 384 (9th Cir. 2009); Gilbert v. Bd. of Medical Examiners of the State of

---

fact properly before it, and the parties had an adequate opportunity to litigate.

Arizona, 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987) ("Dr. Gilbert argues on appeal that board members and others were conspiring against him and were motivated to act for reasons other than protection of the public. This assertion of irregularity in the proceedings before BOMEX could have been raised during those proceedings and on appeal of the board decision to the superior court.") That these constitutional claims could have been raised in the ADWR proceeding is reinforced by the fact that Wind River actually raised during that proceeding a federal due process claim stemming from an alleged irregularity in the proceeding that was rejected by the state ALJ in his written decision, and by the fact that the federal claims set forth in the First Amended Complaint were contained in the notice of claim filed by the plaintiffs prior to the expiration of their time to appeal the administrative decision to the state court. Having failed to avail themselves of the opportunity to pursue their constitutional claims at the state level, the plaintiffs are barred from doing so in this action.[4]

III. Supplemental Jurisdiction

Since the sole original jurisdictional basis for this action is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and since the Court is dismissing both of the federal claims raised in the First Amended Complaint, the Court concludes that it should decline to exercise its supplemental jurisdiction over the remaining state law claims in the First Amended Complaint and will dismiss those claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may

---

[4] While the plaintiffs are correct that they are not required to exhaust state remedies prior to filing a § 1983 action, that legal principle is inapposite here since the federal claims are being dismissed pursuant to the doctrine of res judicata, not for non-exhaustion. *See* Miller v. County of Santa Cruz, 39 F.3d 1030, 1034 n.3 (9th Cir.1994), *cert. denied,* 515 U.S. 1160 (1995).

decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction); Fichman v. Media Center, 512 F.3d 1157, 1162-63 (9th Cir. 2008) ("Having granted judgment on the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims.")  Therefore,

IT IS ORDERED that the plaintiffs' Request for Telephonic Status Hearing (doc. #104) is denied.

IT IS FURTHER ORDERED that defendant Jack Riley's Alternative Motion for a More Definite Statement (doc. #89) is denied.

IT IS FURTHER ORDERED that Defendant Jack Riley's Motion to Dismiss Plaintiffs' First Amended Complaint (doc. #89), Defendant Bob Frisby's Motion to Dismiss (doc. #90), and Rule 12(b) Motion to Dismiss of Defendants Herb Guenther and Karen Smith (doc. #91) are all granted to the following extent: the two federal claims, the First Cause of Action (Denial of Due Process) and the Ninth Cause of Action (Equal Protection) of the First Amended Complaint, are both dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6), and the seven state law claims, the Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action of the First Amended Complaint, are all dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  The Clerk of the Court shall enter judgment accordingly.

DATED this 3rd day of March, 2010.

_____
Paul G. Rosenblatt
United States District Judge